IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WILLIS BAIRD, # K-81582,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-902-JPG |
| | ) |
| **SALVADORE GODINEZ, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, seeking immediate injunctive relief as well as damages. His 79-page complaint (Doc. 1; Doc. 1-1, and Doc. 1-2, pp. 1-29) names 22 known Defendants as well as at least one unknown (John Doe) Defendant. It includes claims that on June 16, 2014, certain Defendant correctional officers handcuffed Plaintiff's wrists so tightly that he sustained cuts and bruises, and then wrenched and twisted the cuffs until the bones in his wrists were fractured. Prior to this incident, Plaintiff had asked other Defendants to protect him from the officer who initiated the excessive force, but they failed to take any protective measures even though he had advised them of the officer's escalating aggressive conduct toward him. Plaintiff contends that the handcuff incident was in retaliation for his having brought prior lawsuits against some of these Defendants and against their colleague officers.[1]

In addition to the complaint, Plaintiff filed a motion for preliminary injunction or

---

[1] Plaintiff has two other civil rights suits pending in this Court against various Lawrence officials: *Baird v. Hodge, et al.*, Case No. 13-cv-376-MJR-SCW (filed April 17, 2013); and *Baird v. Knop, et al.*, Case No. 13-cv-979-NJR-DGW (filed Sept. 23, 2013). A third suit, *Baird v. Berry, et al.*, Case No. 13-cv-826-JPG-PMF (filed Sept. 23, 2013), was recently dismissed on August 12, 2014, because Plaintiff failed to pay the initial partial filing fee for the case.

temporary restraining order (TRO) (Doc. 4), and a motion for hearing on the emergency preliminary injunction/TRO request (Doc. 5). Neither motion requests specific relief, but in them, Plaintiff describes another beating he endured on July 10, 2014, at the hands of several officers. He could identify only one of them (Bryan Perdue); this individual is not a named Defendant herein (Doc. 4, p. 13). Plaintiff's complaint, however, requests injunctive relief in the form of general "protection from further retaliatory acts from staff," particularly from several specific Defendants, and a transfer or placement in protective custody.

**Factual Summary – Statement of Claim (Doc. 1-1, pp. 1-30; Doc. 1-2, pp. 1-39)**

Plaintiff's statement of his claim spans 59 pages, plus a ten-page "Background" statement. He organizes his claims by listing each Defendant, starting with IDOC Director Godinez, and describing how each individual has allegedly violated his constitutional rights. The Court finds it most helpful to understand the events giving rise to Plaintiff's claims by reviewing them in chronological order, however. To that end, the factual summary below is drawn from Plaintiff's statement of claim and background description.

Plaintiff was transferred to Lawrence in July 2012, following a disciplinary matter in another prison which was later expunged (Doc. 1-2, p. 30). During 2013, he filed three lawsuits against various Lawrence officials, two of which are still pending in this Court. He claims to have suffered numerous retaliatory acts by several prison staff members since filing those suits, some of which are the subject of his claims herein (Doc. 1-2, pp. 32-33).

In January 2014, Defendant Livingston, who is a co-worker and friend of several of the Defendants named in Plaintiff's 2013 lawsuits, began a series of retaliatory actions against Plaintiff. These included verbal harassment, and escalated to "pat-downs" of Plaintiff which he characterizes as "excessive force" – where Defendant Livingston would "slap[] up and down

[Plaintiff's] body multiple times, each time becoming more painful then the last [sic]" (Doc. 1-2, p. 35). An incident on January 25, 2014, was caught on video surveillance in the Dietary area. Plaintiff's grievances over these incidents were never returned by Defendant Horton (counselor), and his inquiries about the fate of the grievances were unsuccessful. Defendant Horton's failure to respond prevented Plaintiff from using the grievance process to seek further review of his complaints (Doc. 1-2, pp. 1-2).

On January 30, 2014, Plaintiff wrote to Defendant Godinez, enclosing 60 pages of documents, and asked for a transfer or protective custody because of Defendant Livingston's aggression (Doc. 1-1, pp. 1-2). Similarly, Plaintiff wrote to Defendant Warden Gaetz in January and February 2013, asking for a transfer because of the danger posed by Lawrence staff (Doc. 1-1, p. 5). Plaintiff also wrote to Defendants Duncan and Treadway (assistant wardens), and to Defendant Stafford (internal affairs) regarding Defendant Livingston's behavior (Doc. 1-1, pp. 9, 12, 15). On March 3, 2014, Defendant Gaetz wrote back and told Plaintiff he would be interviewed by other staff about his safety concerns.

As a result of Plaintiff's letter to Defendant Godinez, Defendant Gabor interviewed Plaintiff in early March 2014 to investigate his concerns. Defendant Gabor was to report back to Defendant Godinez, who would then make a decision as to any action to be taken (Doc. 1-1, pp. 7-8).

On March 25, 2014, Plaintiff wrote Defendant Gaetz again seeking protection, when he had not received any further response. He also wrote again to Defendants Duncan and Treadway, and filed an emergency grievance that Defendant Duncan deemed to be non-emergency (Doc. 1-1, pp. 10, 12). Nothing was done in response to these inquiries, and Plaintiff continued to encounter Defendant Livingston on a regular basis when going for meals. Plaintiff

further claims that the failure of Defendants Treadway and Stafford to address his concerns was in retaliation for being sued by Plaintiff in another case in 2013 (Doc. 1-1, pp. 14, 16).

On June 16, 2014, Defendant Livingston called Plaintiff out of the dinner line and ordered him to the end of the line. Although Plaintiff claims to have offered no resistance, Defendant Livingston placed Plaintiff in handcuffs with his arms behind his back, and fastened them so tightly that they painfully cut into his skin (Doc. 1-1, pp. 25-30). Plaintiff told Defendant Livingston that he was in pain, and asked him to loosen the cuffs. Instead, Defendant Livingston grabbed the handcuffs, twisted and lifted them up to the point that Plaintiff's arms could not go any higher. He was forced to bend forward at the waist in an attempt to alleviate the pain and pressure on his shoulders. Plaintiff was made to walk back to his housing unit in that position. During that movement, Defendant Livingston took out his pepper spray and warned nearby inmates to get back, placing Plaintiff in fear that the guard in the tower might shoot him if he flinched or jerked away in response to the pain. Plaintiff was left in these tight handcuffs for approximately 35 minutes under the watch of Defendant Livingston. He alleges that all these actions were taken in retaliation for his activity in filing lawsuits against Defendant Livingston's colleagues/friends, and for the grievances Plaintiff filed to complain about Defendant Livingston's harassment earlier in the year.

Also on June 16, 2014, after Plaintiff returned to his housing unit in the handcuffs, he encountered Defendant Whelan and asked him to loosen the cuffs (Doc. 1-1, pp. 17-25). Defendant Whelan instead went into his office with Defendant Livingston, leaving Plaintiff under the control of Defendants Huddlestone and Leaf (Doc. 1-2, p. 4-7).

Defendant Huddlestone took hold of the handcuffs and pinned Plaintiff face-first against a window, intensifying his pain. Defendant Leaf grabbed the back of Plaintiff's neck, forcing his

face into the glass.  They ignored Plaintiff's pleas to loosen the cuffs, claiming they had no handcuff key, and told him to shut up.  Some minutes later, Defendant Whelan emerged from the office.  Plaintiff again requested him to loosen the handcuffs because they "were killing him" (Doc. 1-1, p. 19).  Defendant Whelan did nothing about the problem.  He and Defendant Leaf put Plaintiff into a hot locked shower room for about 30 minutes, where he continued to suffer.

When Defendant Whelan took Plaintiff out, he responded to Plaintiff's entreaties by placing the handcuff key in the lock – but did not actually loosen the cuffs.  Plaintiff believes this was all for show, since about 70 inmates were looking on and heard Plaintiff beg for relief from the tight cuffs.  Defendant Whelan and an unknown (John Doe) guard then escorted Plaintiff to segregation as he continued to complain about the pain in his wrists.   When they passed out of view of the video monitors, Defendant Whelan stopped Plaintiff by yanking on the handcuffs.  He then squeezed one of the cuffs "with all his strength," causing it to close even more tightly on Plaintiff's wrist, and breaking the bone (Doc. 1-1, p. 21).  Plaintiff yelled in pain, and the John Doe Defendant was so shocked that he released Plaintiff's arm.  Defendant Whelan began yelling at Plaintiff while twisting the middle of the cuffs into Plaintiff's wrists and telling him, "I'll earn this lawsuit."  *Id*.  Plaintiff maintains that he never resisted or became combative during the entire episode.

At some point during the time Plaintiff was under the control of Defendant Whelan, the Defendant John Doe Officer slammed his forearm into the back of Plaintiff's neck (Doc. 1-2, pp. 26-27).  He forced Plaintiff's head down to his knees, then lifted Plaintiff's handcuffed wrists up to the point that his right shoulder "popped/separated out of place."  *Id*.  He failed to intervene when Defendant Whelan injured Plaintiff, and failed to summon medical attention.

When Defendant Whelan let up, Plaintiff asked to be taken to Healthcare because of the

severe pain in his wrists. Defendant Whelan refused and again locked Plaintiff in a shower. Defendant Willis finally removed the handcuffs, and Plaintiff saw his "mangled" wrists (Doc. 1-1, p. 22). He showed Defendant Willis his injuries, but Defendant Willis refused to get a nurse (Doc. 1-2, p. 20-21). Plaintiff, who was then in segregation, begged officers for medical attention for the next two hours, to no avail.

About an hour after Plaintiff began complaining about his injured wrists, Defendants Whelan and Livingston filed a false disciplinary report against Plaintiff in connection with the handcuff incident (Doc. 1-1, p. 23). Plaintiff asserts that Defendant Whelan filed the report in retaliation for Plaintiff's complaints about his injuries, and that Defendant Livingston brought charges to cover up his "corporal punishment" of Plaintiff. All but one charge was later expunged, and Plaintiff was released from segregation after 18 days (Doc. 1-1, p. 23; Doc. 1-2, p. 1).

Later in the evening of June 16, while Plaintiff was still in segregation, Defendant Nurse Cusick came to the wing to pass out medications. When she finished, Plaintiff showed her the cuts and knots on his wrists and asked her for medical attention. She claimed not to see any injuries, and acknowledged that Defendant Whelan had told her he had loosened Plaintiff's handcuffs and that Plaintiff just likes to file lawsuits (Doc. 1-1, p. 24-25; Doc. 1-2, pp. 8-11).

The next day, two nurses, Defendants Neal and Wagner, refused to examine Plaintiff or give him any treatment for the pain, swelling, and cuts on his wrists (Doc. 1-2, pp. 11-13). Several guards on duty in the segregation wing, Defendants Gangloff, Adamson, Bryant, Bruner, and McAlister, also refused to summon medical personnel despite Plaintiff's requests (Doc. 1-2, pp. 15, 17, 22-25). He then went on a hunger strike, and finally got some treatment two days after being injured. It was ultimately determined that both Plaintiff's wrists had been fractured

as a result of the handcuff incident. A cast was placed on one wrist.

Plaintiff further complains that Defendant McAlister refused to provide him with any evening meal on June 16, 2014 (Doc. 1-2, p. 16). He had not been able to eat because Defendant Livingston pulled him out of the dinner line. The next morning, Defendant Gangloff refused to give Plaintiff a breakfast tray when other inmates were served (Doc. 1-2, p. 18). Defendant Buchanan likewise refused to get Plaintiff any food at the same breakfast, and refused to get him any medical assistance (Doc. 1-2, pp. 19-20).

On June 26, 2014, Plaintiff was taken for x-rays, where he encountered Defendant Goins, a high-ranking Lawrence officer. He asked Plaintiff who had injured his wrists, and Plaintiff replied that Defendants Livingston and Whelan had hurt him. Defendant Goins responded, "I'll have to put them in for officer of the year" (Doc. 1-2, p. 28). Plaintiff believes this statement, made in the presence of other prison staff, will encourage other officers to inflict physical harm on him in the future. Since then, he has been fearful of contact with any prison officer.

As relief, Plaintiff seeks an injunction to protect him from further retaliatory acts by Defendants Livingston and Whelan, and from other officers including Berry, Knop, and Ochs.[2] He also requests an order to transfer him or place him in protective custody, and seeks compensatory and punitive damages (Doc. 1, p. 20).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the

---

[2] Berry, Knop, and Ochs are not named as Defendants herein, nor does Plaintiff include any allegations of wrongdoing on their part in the body of his complaint.

following colorable federal causes of action, which shall receive further review:

**Count 1:** Eighth Amendment claim against Defendants Godinez, Gaetz, Duncan, Treadway, and Stafford, for failing to take any measures to separate Plaintiff from Defendant Livingston despite Plaintiff's complaints of his aggressive behavior and requests for protection;

**Count 2:** First Amendment claim against Defendants Treadway and Stafford, who refused to act on Plaintiff's requests for protection from Defendant Livingston in retaliation for Plaintiff's 2013 lawsuits against them;

**Count 3:** Eighth Amendment claim against Defendants Livingston, Whelan, Huddlestone, Leaf, and the John Doe Officer, for using excessive force on Plaintiff on June 16, 2014, causing serious injuries to his wrists and inflicting pain on him without justification, and against the John Doe Officer for failing to intervene when Defendant Whelan broke Plaintiff's wrist;

**Count 4:** First Amendment claim against Defendant Livingston, for targeting Plaintiff with aggressive physical pat-downs, injuring him with the handcuffs, and bringing false disciplinary charges in retaliation for Plaintiff's 2013 lawsuits against his co-workers and for Plaintiff's grievances against him;

**Count 5:** Eighth Amendment deliberate indifference claim against Defendants Livingston, Whelan, Willis, Bruner, Bryant, Adamson, McAlister, Gangloff, Buchanan, and the John Doe Officer, for failing to summon medical staff when Plaintiff requested help for his painful injuries;

**Count 6:** First Amendment claim against Defendant Whelan, for bringing false disciplinary charges against Plaintiff in retaliation for Plaintiff's complaints about the injuries he inflicted; and

**Count 7:** Eighth Amendment deliberate indifference claim against medical Defendants Cusick, Neal, and Wagner, who refused to treat Plaintiff's pain or serious injuries inflicted on June 16, 2014.

However, Plaintiff's failure-to-protect claim against Defendant Gabor in connection with Count 1 shall be dismissed. Further, his claims against Defendant Horton for mishandling his grievances (**Count 8**), against Defendants McAllister, Gangloff, and Buchanan for refusing to provide Plaintiff with two meals (**Count 9**), and against Defendant Goins for commenting that the guards who injured Plaintiff should be rewarded (**Count 10**) do not survive § 1915A review, and shall be dismissed.

**Count 1 – Dismissal of Defendant Gabor**

At this early stage, Plaintiff's allegations suggest that Defendants Godinez, Gaetz, Duncan, Treadway, and Stafford might be personally responsible for failing to take any action to protect Plaintiff from harm at the hands of Defendant Livingston.  A supervisor cannot be held liable in a civil rights action for the unconstitutional acts of a subordinate employee.  *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (the doctrine of *respondeat superior* is not applicable to § 1983 actions).  However, a supervisor who did not directly participate in a constitutional violation may be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates.  *Sanville*, 266 F.3d at 740 (discussing *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).  Further factual development will be necessary in order to determine whether these Defendants' failure to act on Plaintiff's requests rose to the level of deliberate indifference to a known risk of harm.

Plaintiff's allegations regarding Defendant Gabor, however, do not suggest that he violated any constitutional rights.  He was dispatched at the behest of Defendant Godinez to interview Plaintiff and report back to Defendant Godinez on his investigation.  Defendant Godinez would then decide whether action was needed.  The complaint indicates that Defendant Gabor fulfilled this investigative function, and had no authority to change the conditions of Plaintiff's confinement.  Accordingly, no claim is stated against Defendant Gabor, and he shall be dismissed from the action with prejudice.

**Dismissal of Count 8 – Failure to Process Grievances**

Plaintiff's only complaint against Defendant Horton, his counselor, is that he failed to

respond to grievances Plaintiff filed about Defendant Livingston's behavior and related concerns. While Defendant Horton's inaction may indeed have stymied Plaintiff's efforts to seek redress through the prison's internal grievance procedure, and cannot be condoned, such behavior does not violate the Constitution.

The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, any failure to investigate or respond to Plaintiff's grievances, or any other action or inaction with regard to the grievance procedure on the part of Defendant Horton (or any other Defendant) will not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

For these reasons, Count 8 and Defendant Horton will be dismissed from the action with prejudice. In addition, the Clerk shall be directed to terminate Defendant "Correctional Counselor" from the action, as it appears this was merely a description of Defendant Horton, and not a distinct party (Doc. 1, pp. 4-5).

**Dismissal of Count 9 – Denial of Meals**

In some circumstances, a prisoner's claim that he was denied food may satisfy the objective element of an Eighth Amendment claim – which requires that the prisoner suffered an

unquestioned and serious deprivation of a basic human need. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) *Farmer v. Brennan*, 511 U.S. 825, 837 (1970). However, as the Seventh Circuit has held, any denial of food is not a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation); *Cooper v. Sheriff of Lubbock Cnty.*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days is unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health.").

Here, Plaintiff was deprived of one dinner meal and the following breakfast meal at the hands of Defendants McAllister, Gangloff, and Buchanan. He does not indicate that he was denied food on any other occasions. Although Plaintiff no doubt experienced some temporary discomfort, his meal service was resumed and he does not allege that his health was impaired.[3] There is no excuse for the refusal of these Defendants to feed Plaintiff for two meals in a row, but their actions do not rise to the level of a constitutional violation. Count 8 shall therefore be dismissed with prejudice.

---

[3] Ironically, soon after these Defendants withheld two meals, Plaintiff initiated a hunger strike in order to obtain medical care for his injured wrists.

**Dismissal of Count 10 – Defendant Goins**

Plaintiff seeks to hold Defendant Goins liable for remarking that Defendants Livingston and Whelan should be commended as "officer of the year" for injuring and breaking Plaintiff's wrists. This comment was made in the presence of one other guard and the medical staff member taking Plaintiff's x-ray. While Defendant Goins' statement was offensive, insensitive, and possibly intended to provoke or intimidate Plaintiff, this isolated verbal harassment does not amount to a constitutional violation. "[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment." *Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009); *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws").

Count 10 and Defendant Goins shall be dismissed from the action with prejudice. Nonetheless, Plaintiff's allegations may be relevant to his motion for injunctive relief, in which he also outlines this incident in relation to his request for protection (Doc. 4).

**Pending Motions**

Plaintiff's motion for preliminary injunction and temporary restraining order (Doc. 4) shall be referred to a United States Magistrate Judge for further consideration. The Court notes that Plaintiff has again requested protection from Defendant Livingston and others, in a letter to Defendant Gaetz dated July 28, 2014, in which he references the handcuff incident of June 16, 2014. This letter was sent a short time before Plaintiff filed the instant complaint, and it is not known whether any steps have been taken that would affect the Court's consideration of the motion for injunctive relief.

The motion for the Court to hold an emergency hearing on the motion for preliminary

injunction or temporary restraining order (Doc. 5) shall also be referred to the United States Magistrate Judge for further consideration. Both of these motions reference a more recent attack by several officers on Plaintiff, which took place on July 10, 2014. This incident is not referenced in the complaint, thus any constitutional claims arising from that event are not included in the Court's merits review discussion above.

**Disposition**

The Clerk is **DIRECTED** to terminate Defendant "Correctional Counselor" from the action, as this party was added in error.

**COUNTS 8, 9, and 10** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **GABOR, HORTON,** and **GOINS** are **DISMISSED** from this action with prejudice.

The Clerk of Court shall prepare for Defendants **GODINEZ, GAETZ, DUNCAN, TREADWAY, STAFFORD, WHELAN, LIVINGSTON, HUDDLESTONE, LEAF, CUSICK, WAGNER, NEAL, McALISTER, GANGLOFF, BUCHANAN, WILLIS, BRYANT, ADAMSON,** and **BRUNER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendant(s) until such time as

Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 11, 2014**

*s/J. Phil Gilbert*
United States District Judge