IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**WILLIS BAIRD,**

      **Plaintiff,**

vs.

**SALVADORE GODINEZ, DONALD GAETZ, STEVEN DUNCAN, ANNE TREDWAY, BRIAN STAFFORD, JAMES WHALEN, B. LIVINGSTTON, HUDDLESTONE, LEAF, LINDA CUSICK, WAGNER, NEAL, TIMOTHY MCALISTER, ANDREW GANGLOFF, ZACHARIAH DUCHANAN, DALLAS WILLIS, C. BRANT, E. ADAMSON, RONALD BRUNER, and JOHN DOE,**

      **Defendants.**

Case No.   14-cv-902-JPG-SCW

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

    This case is before the Court on a Motion for Preliminary Injunction (Doc. 2) found in Plaintiff's Complaint (Doc. 1).  The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).  It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Plaintiff's motion for preliminary injunction (Doc. 38).

### FINDINGS OF FACT

    *Pro se* Plaintiff Willis Baird filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging excessive force, failure to protect, retaliation, and deliberate indifference against numerous

correctional officers and staff at Lawrence Correctional Center (Doc. 1). Plaintiff's Complaint alleged a series of retaliatory actions and excessive force against Defendant Livingston from January 2014 to June 2014, including verbal harassment and pat-downs which Plaintiff labeled as excessive force. Plaintiff alleged that Livingston's actions were in retaliation for Plaintiff filing lawsuits against co-workers of Livingston in 2013 (Doc. 8 at p. 2). Plaintiff alleges that he wrote grievances to his counselor, Defendant Horton, as well as wrote to Defendant Godinez, Defendant Warden Gaetz, and Defendants Duncan, Treadway, and Stafford. Gaetz wrote back to Plaintiff telling him that he would be interviewed about his safety concerns regarding Livingston (*Id.* at p. 3). Plaintiff was interviewed by Defendant Gabor in early March 2014, but Plaintiff never heard anything back from Defendants (*Id.*). Plaintiff wrote Defendant Gaetz seeking protection from Livingston again on March 25, 2014 without a response (*Id.* at p. 3). He also wrote Duncan and Treadway again, and filed an emergency grievance with Duncan which was deemed a non-emergency (*Id.*).

The bulk of Plaintiff's Complaint focuses on an encounter with various Defendants on June 16, 2014 (Doc. 8 at p. 4). Plaintiff's Complaint alleged that Defendant Livingston pulled Plaintiff out of the dinner line and placed him in handcuffs, with hands behind his back so tight that they cut his skin (*Id*). He then twisted the cuffs up so that Plaintiff had to bend forward in order to walk (*Id.*). Livingston then allegedly took Plaintiff back to his housing unit and left Plaintiff in the cuffs for 35 minutes (*Id.*). During that time he asked Defendant Whelan to loosen the cuffs, but was ignored (*Id.*). At some point, Defendant Huddlestone took the handcuffs and pinned Plaintiff face-first against the window (*Id.*). Defendant Leaf grabbed his neck, forcing his face into the glass (*Id.* at pp. 4-5). Plaintiff continued to ask that the cuffs be loosened but Huddlestone, Leaf, and Whelan refused (*Id.* at p. 5). Defendant Whelan and Defendant Leaf then put Plaintiff in a hot locked shower room for thirty minutes (*Id.*).

Defendant Whelan eventually took Plaintiff out of the shower room and then placed a key in the lock of the handcuffs but refused to loosen the cuffs (Doc. 8 at p. 5). Whelan and a John Doe Defendant then escorted Plaintiff to segregation (*Id.*). Plaintiff continued to complain about his wrists. Defendant Whalen yanked on the handcuffs causing Plaintiff to stop and then squeezed the cuffs, ultimately causing Plaintiff's wrists to break (*Id.* at p. 5). Plaintiff yelled in pain and Defendant Whelan yelled and twisted the cuffs (*Id.*). At some point during the transfer, the John Doe Defendant slammed his forearm into the back of Plaintiff's neck and forced Plaintiff's head down to his knees then lifted the handcuffs up until Plaintiff's right shoulder separated out of place (*Id.*).

Plaintiff asked to be taken to the healthcare unit but Defendant Whelan refused and instead locked him again in a shower room (Doc. 8 at pp. 5-6). Defendant Willis eventually removed the handcuffs but refused to get Plaintiff a nurse to check his injuries (*Id.* at p. 6). Plaintiff continued to ask for medical attention but was refused. After the incident, Defendant Whelan and Livingston wrote a disciplinary report regarding the handcuff incident, which Plaintiff claims was false (*Id.*).

Later in the evening on June 16, Plaintiff, still in segregation, spoke with Defendant Nurse Cusick who was passing out medication (Doc. 8 at p. 6). He asked her to look at his wrists but she claimed not to see anything (*Id.*). Two other nurses, Neal and Wagner, refused to examine Plaintiff the next day. Plaintiff alleged that he had to go on a hunger strike two days after the injury in order to ultimately get medical attention. At that time, it was determined that his wrists were fractured (Doc. 8 at pp. 6-7).

Plaintiff's Complaint also alleged that Defendant McAlister refused to provide him with an evening meal on June 16, 2014 and that he was not able to eat because Livingston pulled him out of the dinner line (Doc. 8 at p. 7). Defendant Gangloss refused to bring him breakfast the next day and a Defendant Buchanan also refused to get him breakfast. Plaintiff alleges that he received x-rays on his

wrists on June 26, 2014 and at that time he encountered Defendant Goins who allegedly told him he would give Livingston and Whalen "officer of the year" for their actions.

After the Court's threshold review, the following claims remain: (1) a failure to protect claim against Defendants Godinez, Gaetz, Duncan, Treadway, and Stafford for failing to separate him from Defendant Livingston despite Plaintiff's complaints about past excessive force; (2) a retaliation claim against Treadway and Stafford on the basis that they refused him protection in retaliation for his 2013 lawsuits against them; (3) an excessive force claim against Livingston, Whelan, Huddlestone, Leaf, and John Doe for the excessive force they used on June 16, 2014 and a failure to intervene claim against John Doe Defendant for failing to stop Whelan from breaking his wrists; (4) a retaliation claim against Livingston for the alleged pat-downs and false disciplinary report; (5) a deliberate indifference claim against Defendants Livingston, Whelan, Willis, Bruner, Bryant, Adamson, McAlister, Gangloff, Buchanan, and John Doe Defendant for failing to provide him with medical care after the handcuff incident; (6) a retaliation claim against Whelan for the false disciplinary report, and a (7) deliberate indifference claim against Cusick, Neal, and Wagner for failing to treat his injuries.

In addition to his Complaint, Plaintiff also filed a Motion for Preliminary Injunction or Temporary Restraining Order (Doc. 4) as well as an Emergency Motion for Hearing (Doc. 5). Plaintiff's motion contained a litany of allegations including numerous violations by individuals not a party to this suit. Plaintiff recounted various actions of retaliation which he claims has occurred since he filed three federal lawsuits in 2013 including: opening and confiscating legal mail, being exposed by staff as an ex-police officer, false disciplinary charges, due process hearing violations, assault by handcuffs, inadequate medical treatment, not responding to grievances, threats, and dangerous cell assignments (Doc. 4 at pp. 4-12). He did not indicate which employees at Lawrence Correctional Center committed these actions or when these events occurred. Plaintiff's motion also discussed the

handcuff incident on June 16, 2014 but then went on to discuss a failure to obtain legal materials, a hunger strike, and a subsequent assault by numerous officers, including a Bryan Perdue (Doc. 4 at pp. 13-14). Although Plaintiff did not state any requested relief, he noted that he has asked for a transfer from the prison on numerous occasions since he has filed his law suits (*Id.* at p. 12) and noted that he has been placed in a housing unit where Bryan Perdue works, continues to be escorted by Defendant Livingston, and that Defendant Whelan has been his housing unit lieutenant on multiple occasions (Doc. 15). Judge Gilbert referred the motion to the undersigned for further consideration because of Plaintiff's discussion in the motion about a request for protection from Livingston from the warden, that has went unanswered (Doc. 8 at p.12).

After Plaintiff filed his Motion for Preliminary Injunction, he subsequently filed an Amended Motion for Preliminary Injunction or Temporary Restraining Order (Doc. 38). Plaintiff's amended motion added additional allegations related to Bryan Perdue which occurred after the filing of his Complaint. He alleged that on September 15, 2014, Perdue confronted Plaintiff and threatened him with use of the Orange Crush unit, that he horse kicked a door into his head on September 23, 2014, and that he wrote a false disciplinary report against him (Doc. 38 at pp. 17-18).

On January 20, 2015, the undersigned found as moot Plaintiff's initial motion for preliminary injunction (Docs. 4 and 5) as he had subsequently filed his amended motion for preliminary injunction (Doc. 65) which was identical except for added allegations against Perdue. The Court also found as moot Plaintiff's allegations for injunctive relief related to Bryan Perdue as Perdue was not a party to this case and Plaintiff had also filed a subsequent case involving the claims against Perdue (*Id.* at p. 6). The undersigned narrowed Plaintiff's injunctive request to claims related to Livingston and Whelan. Plaintiff's motion re-alleged his excessive force claims against these Defendants and stated that he was still in a housing unit with Livingston and Whelan, subjecting him to further fear that he will be

attacked by these individuals, although he has not described any further actions by these two Defendants. Plaintiff indicates that he has sought a transfer from these two individuals which has been denied. Although not clear from Plaintiff's motion, the Court found that Plaintiff's motion seemed to suggest that Plaintiff wanted an order protecting him from Livingston and Whelan and possibly a transfer (Doc. 65 at p. 6). As such, the Court ordered Defendants to respond to Plaintiff's motion for preliminary injunction.

Defendants filed a response to Plaintiff's motion on January 30, 2015 (Doc. 68) and argued that Plaintiff had not shown he was entitled to the relief he sought because he had not shown a likelihood of success on the merits nor a likelihood that he was going to suffer irreparable harm. Defendants noted that Plaintiff's motion only expressed a concern that he would be killed by retaliating officers but did not specify that Livingston and Whelan have continued any retaliatory actions against him since the allegations set forth in his complaint.

In response to Defendants' brief, Plaintiff filed a Motion to Dismiss Defendants' Response (Doc. 72) because the brief stated on page seven that Plaintiff had not specified how Defendants Walls and Butler were violating Plaintiff's rights. Plaintiff pointed out that Walls and Butler are not parties to this case and thus counsel's arguments do not pertain to the instant action. However, the undersigned finds that defense counsel's statements regarding Walls and Butler appear to be a mere error as counsel refers to Defendants Livingston and Whelan in the majority of the motion and addresses the specific arguments set forth in Plaintiff's motion. The reference of Walls and Butler appears to be a mere mistake of names in writing the response. Thus, the undersigned **DENIES** Plaintiff's motion to dismiss as Defendants' brief clearly addresses the claims in Plaintiff's motion and will consider the arguments set forth in the brief.

The undersigned also notes that since the filing of Plaintiff's motion, Plaintiff has filed a notice

with the Court indicating that he is no longer housed at Lawrence Correctional Center (Doc. 81). Plaintiff's notice indicates that he has been released from Lawrence and currently resides in Wakegan, Illinois.

## CONCLUSIONS OF LAW

**A.     Preliminary Injunction Standard**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20). The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, 612 F.3d at 546.

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging

**prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* **(citing** *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

**B.     Analysis**

Here, since the filing of Plaintiff's motion, Plaintiff has notified the Court that he is no longer housed at Lawrence Correctional Center. In fact, Plaintiff indicates that he is currently living in Waukegan, Illionis. The IDOC website confirms that Plaintiff was released from its custody on April 3, 2015. *See* http://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last accessed April__, 2015). A prisoner's request for injunctive relief is rendered moot by his release from prison. *Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008). The request is moot unless "he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, **83 F.3d 807, 812 (7th Cir. 1996)(citing** *Moore v. Thieret*, **862 F.2d 148, 150 (7th Cir. 1988)).** Allegations of a likely retransfer may not be based on mere speculation. *Id.* It is clear that Plaintiff has been released from IDOC custody and Plaintiff has made no showing that he is likely to be placed back in the correctional system anytime in the future, nor is there any indication that if he is placed back in IDOC custody that he will again be housed at Lawrence Correctional Center. Thus, the undersigned **RECOMMENDS**

that the Court **FIND** Plaintiff's request for preliminary injunction/temporary restraining order **MOOT** in light of his release from prison.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that the Court **DENY AS MOOT** Plaintiff's motion for preliminary injunction as he has been released from IDOC custody.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals**.** *See, e.g., Snyder v. Nolen***, 380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **May 1, 2015**.

**IT IS SO ORDERED**.
DATED: April 14, 2015.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge